**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1427**

UNITED NATIONAL INSURANCE COMPANY a/s/o Council of Unit Owners
Pelican Beach Condominium,

                 Plaintiff - Appellant,

        v.

PENINSULA ROOFING COMPANY, INC.,

                 Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
George L. Russell, III, District Judge.  (1:16-cv-03548-GLR)

Argued:  March 20, 2019                    Decided:  June 19, 2019

Before GREGORY, Chief Judge, and KING and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Guillermo Emmanuel Sylianteng, III, WES LITIGATION GROUP LLC, Doylestown,
Pennsylvania, for Appellant.  Sean Patrick Edwards, LAW OFFICES OF FRANK F.
DAILY, P.A., Hunt Valley, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this diversity action, we apply Maryland law to decide the scope and enforceability of a subrogation waiver in a form construction contract. United National Insurance Company brought several claims in subrogation against one of the parties to the contract, Peninsula Roofing Company. Peninsula moved for summary judgment, arguing that the subrogation waiver barred United National's claims. The district court agreed. On appeal, United National argues that the subrogation waiver does not apply, since its claims, though brought in subrogation, involve recovery for property damage allegedly caused by Peninsula's breach of contract. Alternatively, United National argues that as a matter of Maryland law, the subrogation waiver is unenforceable—at least to the extent that it bars claims against Peninsula for Peninsula's gross negligence or sole negligence. We disagree with United National: the waiver is both applicable and enforceable. Therefore, we affirm the district court's grant of summary judgment.

## I.

Pelican Beach condominium complex needed a new roof. The condo association hired an engineering firm to develop specifications for the new roof, prepare a bid package, and draw up a contract for the roof-replacement job. This process culminated in a contract between the condo association and Peninsula Roofing Company, Inc.[1]

Peninsula's roofers got to work. At some point, the roofers parked their truck in the

---

[1] In relevant part, the contract is a standard document that has been endorsed by the American Institute of Architects (AIA) and is in wide use throughout the nation.

condo's parking garage—even though the contract told them not to. They ran extension cords from their tools on the roof down to a generator sitting in their truck. The generator caught fire and the fire spread, causing about $3 million in property damage.

The condo association's property insurance, underwritten by United National, covered the damage. United National then sued Peninsula in federal court to recover the amount it had paid out to the condo association, bringing claims in tort (for negligence and gross negligence) and breach of contract.[2]

United National's claims against Peninsula are "subrogated." Subrogation refers to "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." *John L. Mattingly Const. Co. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1069 (Md. 2010) (quoting Black's Law Dictionary 1563–64 (9th ed. 2009)). As is relevant here, "[a]n insurer asserting a subrogation right is usually viewed as standing in the shoes of the insured so that the insurer's rights are equal to, but no greater than, those of the insured." *Id.* (quotation marks and citation omitted). Thus, United National, having paid the condo association to cover the costs of the fire, stepped into the condo association's shoes and brought suit against Peninsula.

Peninsula moved for summary judgment, arguing that the condo association had

---

[2] We have jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. The parties agree that the contract at issue was executed in Maryland and that the events giving rise to this suit occurred in Maryland. Accordingly, like the district court, we are satisfied that Maryland law controls the substantive issues.

contractually waived the types of claims that United National was attempting to pursue as the association's subrogee. Specifically, Peninsula pointed to § 11.3.7 of the contract, which states that "[t]he Owner and Contractor waive all rights against [] each other . . . for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work . . . ." J.A. 236. (We refer to this provision of the contract as the "subrogation waiver.") According to Peninsula, the condo association agreed to waive its right to sue Peninsula to recover the costs of fire damage—at least to the extent that those costs were covered by the condo association's property insurance. Since the condo association's property insurance covered the costs of the fire damage, the condo association could not sue Peninsula to recover the same costs. And since the condo association could not sue Peninsula, United National could not sue Peninsula in subrogation.

United National countered that the subrogation waiver did not bar its claims because the waiver was either inapplicable or unenforceable. It gave three reasons that remain relevant here. (1) By its plain text, the waiver refers only to damage caused by contractually authorized work. The contract prohibited Peninsula from using the parking garage without permission. Peninsula's truck and generator were in the parking garage without permission when the fire broke out. Therefore, the fire damage was not caused by contractually authorized work, and the subrogation waiver does not apply. (2) As a matter of Maryland public policy, subrogation waivers in construction contracts cannot bar claims sounding in gross negligence. (3) Finally, Maryland law renders subrogation waivers void to the extent that they would bar recovery for a contractor's sole negligence.

4

The district court rejected United National's arguments, concluding that the subrogation waiver was both applicable and enforceable, and that it therefore barred United National's claims. Accordingly, the district court granted summary judgment to Peninsula. United National timely noticed this appeal. We review de novo. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 565 n.1 (4th Cir. 2015).

## II.

### A.

United National argues that by its text, the subrogation waiver is applicable only to damage caused by activities that Peninsula was authorized to perform under the contract. Our analysis of this issue turns on the waiver's plain language.[3] As noted above, the subrogation waiver provides in relevant part that "[t]he Owner and Contractor waive all

[3] In Maryland, the interpretation of a contract is a matter of law. *Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 234 (4th Cir. 2007). When a claim turns on the interpretation of a contract, there are two circumstances in which summary judgment is appropriate: (1) the contract is unambiguous on its face or (2) the contract is ambiguous, but the court is able to resolve the ambiguity with resort to extrinsic evidence. *Id.* at 235. In a case like this, which involves a form contract, the most significant piece of extrinsic evidence is likely to be the identity of the party that proposed the contract in the first place, for "'[i]t is a basic principle of contract law that, in construing the language of a contract, ambiguities are resolved against' . . . the proponent of the contract." *Mattingly*, 999 A.2d at 1078 (quoting *Burroughs Corp. v. Chesapeake Petroleum & Supply Co.*, 384 A.2d 734, 737 (Md. 1978)). Notably, although United National recites this standard in its opening brief, *see* Appellant's Br. at 10–11, it does not actually argue that the scope of the subrogation waiver is ambiguous. I.e., United National does not develop the argument that the contract is "subject to more than one interpretation when read by a reasonably prudent person." *Id.* (quoting *Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 547 (Md. 2003)). Regardless, we do not consider the language of the subrogation waiver to be ambiguous in any relevant respect, and we see no need to turn to extrinsic evidence.

rights against [] each other . . . for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to [this section] or other property insurance *applicable to the Work . . . .*" J.A. 236 (emphasis supplied). "Work," in turn, is defined as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations." J.A. 348.

On United National's reading, the phrase "applicable to the Work" limits the scope of the subrogation waiver to damages *caused by Work activity*—i.e., activity that was permitted under the terms of the contract. It follows that since Peninsula was not authorized to use the parking garage, its use of the parking garage while making repairs to the roof was extraneous to the Work, and any damage resulting from Peninsula's use of the parking garage falls outside the scope of the subrogation waiver.

We disagree. The phrase "applicable to the Work" does not have the limiting effect that United National proposes. As the district court stated, "applicable to the Work" merely modifies the immediately preceding phrase "other property insurance." *See* J.A. 451. Thus, by the plain text of the subrogation waiver, claims against Peninsula arising from fire damage to the condo association's property are barred as long as two propositions are true: (1) the condo association has property insurance applicable to the Work and (2) the condo association's insurance policy covers the cost of the condo's fire damage. United National does not contest that propositions (1) and (2) are true. *See* J.A. 265. Consequently, under the terms of the subrogation waiver, United National's claims

6

against Peninsula are barred.

To accept United National's reading of the subrogation waiver—that it applies only to damage that is both covered by property insurance and *caused by* activity falling within the scope of Work—we would need to insert new language into the waiver's text. That is, we would need to rewrite the waiver along roughly these lines: "the Owner and Contractor waive all rights against each other for damages caused by fire or other causes of loss, to the extent covered by property insurance obtained pursuant to this section or other property insurance applicable to the Work, *unless said damages were caused by the Contractor's non-Work conduct*."

United National has given us no persuasive reason to engage in this editorial exercise. Its best shot is a citation to an opinion in which we stated that "waivers of subrogation should not be enforced outside of their context." *Am. Home Ins. Co. v. Monsanto Enviro-Chem Sys., Inc.*, 16 F. App'x 172, 176 (4th Cir. 2001). Yet when that case is read in full, it does not support United National's position. What we meant in *American Home Insurance* was that "at some point, remoteness from the subject matter of the contract will prevent even an extremely broad subrogation waiver from operating." *Id.* Here, whatever else may be said about Peninsula's decision to run its generator in the parking garage while completing the contracted-for construction, that decision was not "remote[] from the subject matter of the contract." *Id.* Thus, in these circumstances, the limiting principle we endorsed in *American Home Insurance* is no barrier to enforcement

7

of the subrogation waiver.[4]

We hold that the subrogation waiver, by its plain terms, is applicable to the fire damage at issue here and bars United National's claims against Peninsula.

B.

United National contends that even if the terms of the subrogation waiver make it applicable to this case, the waiver is unenforceable for two policy-based reasons. First, United National argues that subrogation waivers in construction contracts, like exculpatory clauses in general, cannot bar claims sounding in gross negligence. Alternatively, United National argues that the waiver indemnifies Peninsula for its sole negligence, making it void under Maryland Code, Courts and Judicial Proceedings (CJP) § 5-401(a)(1). Neither argument is persuasive.

---

[4] Taking another contract-interpretation tack, United National argues that Peninsula cannot raise the subrogation waiver as a defense to liability because we must *presume* that the waiver was always meant to be "mutually dependent" with Peninsula's promise not to use the parking garage. *K & G Const. Co. v. Harris*, 164 A.2d 451, 456 (Md. 1960). According to United National, since Peninsula breached its promise not to use the parking garage, it cannot now seek to enforce the condo association's mutually dependent promise to waive its claims.

We disagree. *K & G Construction*—the only case United National cites in support of its argument—has nothing to do with subrogation waivers. Instead, it involves an implied condition precedent in a contract calling for monthly installment payments. On its face, it is readily distinguishable. And even if *K & G Construction* controlled, United National could prevail only if we concluded that "the intention of the parties, as shown by the entire contract as construed in the light of the circumstances of the case," was for the subrogation waiver and the prohibition on using the parking garage to be "mutually dependent." *Id.* That conclusion is simply not tenable here.

8

1.

We begin with United National's argument that the subrogation waiver cannot be enforced against its claims of gross negligence. United National grounds this argument in *Wolf v. Ford*, 644 A.2d 522, 525 (Md. 1994). In *Wolf*, Maryland's highest court stated that "the public interest will not permit an exculpatory clause in a contract" to shield a party from liability for gross negligence. *Id.* *Wolf* did not involve a subrogation waiver in a construction contract. Even so, according to United National, the policy concerns that generally prevent the enforcement of exculpatory clauses against claims of gross negligence apply equally to the subrogation waiver at issue here.[5]

United National does not cite, and we are not aware of, any Maryland authority to support that proposition. Indeed, persuasive authority leans heavily in the opposite direction: multiple state courts of last resort facing the same question have concluded that even though public policy generally prevents the enforcement of exculpatory clauses against claims of gross negligence, the same is not true of subrogation waivers in construction contracts like the one at issue here. *See Lexington Ins. Co. v. Entrex Commc'n Servs., Inc.*, 749 N.W.2d 124, 130 (Neb. 2008); *Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.*, 868 A.2d 220, 227 (Me. 2005); *Behr v. Hook*, 787 A.2d 499, 504 (Vt. 2001); *Chadwick v. CSI, Ltd.*, 629 A.2d 820, 825 (N.H. 1993). United National does not explain why Maryland law requires a different result; nor does United National identify any state court of last resort which supports its own position.

---

[5] We assume for the sake of argument that United National's allegations, if proven, would amount to gross negligence under Maryland law; Peninsula, of course, maintains that they would not.

Three additional factors, all of which the district court addressed, weigh against United National. (1) There is a significant difference between exculpatory clauses in general and the subrogation waiver at issue here. Maryland has recognized that under an exculpatory clause, "the parties expressly . . . agree in advance that the defendant is under no obligation of care for the benefit of the plaintiff, and shall not be liable for the consequences of conduct which would otherwise be negligent." *BJ's Wholesale Club, Inc. v. Rosen*, 80 A.3d 345, 351 (Md. 2013) (quoting *Wolf*, 644 A.2d at 525 (alteration in source)). By contrast, the subrogation waiver at issue here contains no express agreement relieving either party of its duty of care. (2) Unlike exculpatory clauses in general, the subrogation waiver at issue here specifically contemplates that the injured party will be able to recover for its losses. (3) Making subrogation waivers in construction contracts unenforceable against claims of gross negligence would undercut one of the well-recognized purposes of such waivers: to reduce litigation over insured losses sustained during construction projects. *Mattingly*, 999 A.2d at 1069-70.

Given the above, we agree with the district court that United National cannot rely on its allegations of gross negligence to circumvent the subrogation waiver.


2.

Alternatively, United National argues that the subrogation waiver is unenforceable under CJP § 5-401(a)(1). CJP § 5-401(a)(1) states that a "covenant" in a contract "relating to . . . the construction, alteration, repair, or maintenance of a building" is "against public policy" and therefore "void and unenforceable" if it "purport[s] to

10

indemnify the promisee against liability for damages arising out of bodily injury to any person or damage to property caused by or resulting from the sole negligence of the promise or indemnitee." According to United National, the effect of subrogation waivers in construction contracts is to indemnify contractors against liability for damages caused by their work. That makes such waivers unenforceable under CJP § 5-401(a)(1)—at least to the extent that they prevent contractors from being held liable for their sole negligence.

We disagree. No Maryland court at any level has adopted United National's interpretation of CJP § 5-401(a)(1). Admittedly, no Maryland court has explicitly rejected it, either. But Maryland's highest court *has* recognized that subrogation waivers play a useful role in the construction context. Specifically, Maryland's highest court has observed that subrogation waivers "are prevalent in construction contracts," *Mattingly*, 999 A.2d at 1069, and that "[a]s a matter of policy," subrogation waivers "encourage parties to a construction contract to anticipate risks and to procure insurance covering those risks and also facilitate and preserve economic relations and activity," *id.* at 1070 (quoting *Hartford Underwriters Ins. Co. v. Phoebus*, 979 A.2d 299, 304 (Md. Ct. Spec. App. 2009) (some alterations not shown)). In this way, subrogation waivers serve "to cut down the amount of litigation that might otherwise arise due to the existence of an insured loss." *Id.*

If we were to accept United National's novel interpretation of CJP § 5-401(a)(1) and hold that the subrogation waiver operates as an indemnification covenant within the meaning of the statute, rendering it void as against public policy, we would conjure brand-new Maryland law that sits in acute tension with a recent decision of Maryland's

11

highest court. United National identifies no way of resolving this tension and offers no examples of other states that have held subrogation waivers to be unenforceable under anti-indemnification statutes similar to Maryland's.[6] We therefore agree with the district court that CJP § 5-401(a)(1) does not void the challenged subrogation waiver.[7]

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[6] *Cf. Bd. of Ed., Union Free Sch. Dist. No. 3, Town of Brookhaven v. Valden Assocs., Inc.*, 389 N.E.2d 798, 799 (N.Y. 1979) (holding waiver of subrogation in construction contract not void under state anti-indemnification statute).

[7] United National urges us to endorse its interpretation of CJP § 5-401(a)(1) by pointing to another statute: Md. Code, Real Property § 8-105. This second statute involves landlord-tenant law and gives us no reason to think that Maryland lawmakers intended CJP § 5-401(a)(1) to render subrogation waivers in construction contracts void.