NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GROVES PROPERTIES, LP, *Plaintiff/Appellant,*

*v.*

LAYTON CONSTRUCTION COMPANY, LLC, et al., *Defendants/Appellees.*

No. 1 CA-CV 23-0351
FILED 4-9-2024

Appeal from the Superior Court in Maricopa County
No. CV2022-050078
The Honorable Melissa Iyer Julian, Judge

**AFFIRMED**

COUNSEL

Huber Barney PLLC, Gilbert
By Aaron C. Huber, Bryan W. Barney
*Co-counsel for Plaintiff/Appellant*

Tyson & Mendes LLP, Scottsdale
By Lynn M. Allen, Leah M. McKeever, Leslie K. Harrach
*Co-counsel for Plaintiff/Appellant*

Wood Smith Henning & Berman LLP, Phoenix
By Jodi L. Mullis
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Anni Hill Foster and Judge Brian Y. Furuya joined.

---

H O W E, Judge:

¶1        Groves Properties, LP ("Groves") appeals the trial court's grant of summary judgment to Layton Construction Company, LLC ("Layton") and Arizona Fasteners Corporation ("Fasteners") on all of Groves's claims. We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        In 2016, Layton contracted with AABS Properties, LLC to build a two-story building in Gilbert, Arizona. Layton subcontracted Fasteners to construct and install the fireplace and chimney in the building. In 2019, AABS Properties, LLC transferred its rights and obligations under the contract to Groves. Layton and Fasteners had substantially completed the construction of the building by the end of December 2020. Then, about two months later, the building caught on fire.

¶3        Groves had insurance on the building and its insurer covered most of its damages resulting from the fire. However, Groves's insurer did not cover the costs of re-housing the residents or the loss of business income, which totaled about $700,000. Groves then sued Layton and Fasteners, alleging breach of contract, breach of implied warranty of workmanlike construction, breach of express warranty, negligence, and strict liability.

¶4        The contract included two provisions named "Waivers of Subrogation." The first provision, found in the contract's Exhibit G, provided that Groves waived all rights against Layton and its subcontractors "for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section Exhibit G or other property insurance applicable to the Work." The contract's second provision, Section 11.3.1, provided that Groves waived all rights against Layton and its subcontractors "for damages caused by fire . . . . to the extent covered by . . . property insurance applicable to the Project." Under Section 11.3.2, the waiver applies "if, after final payment property

insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period [Groves] waives all rights in accordance with the terms of Section 11.3.1 for damages caused by fire." The "Work" is defined as "[T]he construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment, and services provided or to be provided by the Contractor to fulfill the Contractor's obligation." Finally, Section 11.4 of the contract stated that Groves "waives all rights of action against [Layton and Fasteners] for loss of use of [Groves's] property, due to fire or other hazards however caused."

¶5 Based on these contract provisions, Layton and Fasteners moved for summary judgment on Groves's claims, arguing that the contract barred Groves's suit because it had expressly waived its right to subrogation for fire losses. In response, Groves argued that the contract was ambiguous because the waiver provision in Exhibit G conflicted with the waiver provision in Section 11.3. It argued that the waiver in Exhibit G was controlling and did not waive claims that arose after the Work was completed. It also argued that the waiver of subrogation did not apply to uninsured losses because it would be left without a source of recovery.

¶6 After oral argument, the court granted Layton and Fasteners summary judgment on all Groves's claims. It found that Groves had waived its claims under the contract, that the contract was unambiguous, and that the waiver provisions, read together, were not susceptible to Groves's interpretation. It also found that Section 11.4 of the contract allocated the risk of uninsured losses to Groves. Groves timely appealed. This court has jurisdiction under A.R.S. § 12–2101(A)(1).

## DISCUSSION

¶7 This court reviews "a grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom summary judgment was entered." *Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 10 (2021). Summary judgment is appropriate when the moving party shows that no genuine dispute as to any material fact exists and that it is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a).

## I. Waiver Provisions

¶8 Groves argues that because Exhibit G does not include a provision extending waivers to post-construction claims, like Section 11.3.2 does, the waiver provisions directly conflict. As a result, the principles of

contract interpretation dictate that the waivers of subrogation provisions do not apply to post-construction claims.

¶9 This court interprets contracts de novo because contract interpretation presents a question of law. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593 ¶ 9 (App. 2009). We construe a contract to determine the parties' intent by considering "the plain meaning of the words in the context of the contract as a whole." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 259 (App. 1983); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993).

¶10 The contract is unambiguous because the contract terms are plain, and the waiver provisions do not conflict. As the trial court noted, Section 11.3.2 explicitly extends the waiver of the rights to losses resulting from fire occurring after the construction was completed. Moreover, the parties modified the standard form contract to delete certain parts of it, but not the provision applying waiver to post-construction claims. The trial court thus properly granted Layton and Fasteners summary judgment.

¶11 Groves further argues that the waivers of subrogation do not apply to post-construction claims because other provisions in the contract, which require Layton to maintain general liability insurance to the completed Work, would be rendered superfluous. It also argues that certain warranties in the contract that extend post-construction support its interpretation that the waiver of subrogation did not apply to post-construction claims. Not so. As Layton and Fasteners point out, while they may warrant or insure other losses, the contract expressly carves out an express waiver for fire losses. Parties can insure or warrant certain losses and waive other losses without rendering any of the provisions superfluous. *See 1800 Ocotillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 202 ¶ 8 (2008) ("Our law generally presumes, especially in commercial contexts, that private parties are best able to determine if particular contractual terms serve their interests."). Groves has shown no error.

¶12 Next, Groves relies on *John L. Mattingly Const. Co., Inc. v. Hartford Underwriters Ins. Co.*, 415 Md. 313, 999 A.2d 1066 (2010), *Auto. Ins. Co. of Hartford, Conn. v. United H.R.B. Gen. Contractors, Inc.*, 876 S.W.2d 791 (Mo. Ct. App. 1994), and *S. Ins. Co. v. CJG Enters., Inc.*, 315CV00131RGESBJ, 2017 WL 3449609 (S.D. Iowa May 11, 2017), which found ambiguity in similar subrogation provisions. But those cases are not binding. *See Kotterman v. Killian*, 193 Ariz. 273, 291 ¶ 68 (1999) ("We alone must decide how persuasive the legal opinions of other jurisdictions will be to our holdings."). Even so, they are distinguishable. The contracts in those cases

did not include a provision that expressly extended the waiver to post-construction claims, like Section 11.3.2 does in this case. We discern no error.

## II.    The Uninsured Losses

**¶13**        Groves argues that the waiver of subrogation was limited to damages covered by the insurance and thus the uninsured damages are not subject to the waiver provisions. But the contract accounted for the uninsured damages. Section 11.4 provided that Groves waived all right of action against Layton for loss of use of the property because of fire. Groves had thus waived any rights to losses because of a fire. The trial court did not err.

**¶14**        Groves also argues that the risk allocation provision of the contract is void under Arizona law. But Groves failed to raise this argument in the trial court and has therefore waived it. *Englert v. Carondelet Health Network*, 199 Ariz. 21, 26 ¶ 13 (App. 2000) ("[W]e generally do not consider issues, even constitutional issues, raised for the first time on appeal.").

### CONCLUSION

**¶15**        We affirm. We deny Groves's requests for attorneys' fees and costs under A.R.S. § 12–341.01 because it did not prevail in the action. In our discretion, we grant Layton and Fasteners request for their reasonable attorneys' fees under A.R.S. § 12–341.01 upon compliance with Arizona Rule of Civil Appellate Procedure 21 because this action arose out of a contract, and they were successful on appeal.



AMY M. WOOD • Clerk of the Court
FILED:    AA