71 A.3d 144

## EXXON MOBIL CORPORATION

v.

## Paul D. FORD, et al.

(On Motion for Reconsideration)
No. 16, Sept. Term, 2012.

Court of Appeals of Maryland.

June 25, 2013.

BELL, C.J., HARRELL, BATTAGLIA, GREENE, BARBERA, McDONALD and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

*ON MOTION FOR RECONSIDERATION AND REQUEST FOR BOND PREMIUM COSTS*

HARRELL, J.

Respondents are residents of the Jacksonville community in Baltimore County, Maryland. They were awarded compensatory and non-economic damages by a jury in the Circuit Court for Baltimore County in 2009 flowing from an Exxon contractor's puncture of an underground gasoline feed line on 13 January 2005 at an Exxon Mobil-owned gasoline service station, which went undetected for approximately a month. The

undetected 26,000 gallons of gasoline leaked into the local underground aquifer and contaminated allegedly the source of the wells supplying water to the eighty-seven households of Respondents. After the collective judgments of the trial court in favor of more than 200 individual plaintiffs, totaling $146 million, was affirmed in part and reversed in part by the Court of Special Appeals, *Exxon Mobil Corp. v. Ford*, 204 Md.App 1, 40 A.3d 514 (2012), Respondents and Exxon Mobil ("Exxon" or "Petitioner") petitioned successfully to this Court. In a unanimous Opinion filed on 26 February 2013, we reversed in part and affirmed in part the judgment of the Court of Special Appeals, resulting in part in reversal of the awards for damages of fear of contracting cancer, future costs of medical monitoring (although we recognized, for the first time in Maryland, the possibility of such a claim), and the judgments awarding damages for diminution in property value as to those Respondents whose wells lacked any toxic contamination. *Exxon Mobil Corp. v. Ford*, 433 Md. 426, 491–92, 71 A.3d 105, 144. We also reversed and remanded for a new trial the remaining judgments for damages for diminution in property value. *Id.*

Respondents filed a Motion for Reconsideration on 17 April 2013, largely re-arguing the merits of the questions presented and decided previously. Exxon's response arrived on 6 May 2013, together with its Amended Request for Bond Premium Costs seeking reimbursement in the amount of $920,566. Although we shall deny the Motion for Reconsideration, it is appropriate to address further one contention raised by Respondents.[1] We deny also Exxon's request.

Respondents argued in their motion, among other things, that, in our directions on remand to the trial court

---

1. Among their arguments, Respondents contended that we represented erroneously, in footnote 60 of our earlier Opinion, that the Fox/Shindledecker and Anderson/Curtiss properties tested below the level of 20 ppb of MTBE in their wells. This was an error on our part and was corrected post-filing in the slip opinion. The correction was not substantive or material, however, because the judgments for these Respondents were reversed for other reasons, as explained in the Opinion.

regarding their claims for property damages, they were limited unfairly to possible recovery only for diminution in market value of their properties. Respondents contend that, because they "*never* made an election between pursuit of diminution in market value or loss of use and enjoyment[,]" (emphasis in original) they should have the opportunity on remand to elect between pursuing property damage for diminution in market value or loss of use and enjoyment. The bases for Respondents' argument are (1) the trial judge in *Ford,* unlike the trial judge in *Exxon Mobil Corp. v. Albright,* 433 Md. 502, 503–09, 71 A.3d 150, 151–55 (2013) (a related case, arising from the same acts by Exxon, decided by the Court on the same day as *Ford* ) did not provide Respondents with an express opportunity to elect between either measure of property damages at trial; and, (2) Respondents in *Ford* "never took a position on the permanency of damage to [Respondents' properties] that was inconsistent with an award of damages for loss of use and enjoyment." We disagree.

As the trial drew near to submission to the jury, the trial judge requested on 14 January 2009 that Exxon and Respondents submit to him their proposed jury instructions. Respondents' proposed jury instruction on property damages (based on Maryland Civil Pattern Jury Instruction 10:21) reflected Respondent-initiated strike-outs for damages for loss of use and enjoyment. The pertinent sections of Respondents' proposed jury instruction read as follows:

In an action for recovery of damages for damaged property you shall consider the following:

\* \* \* \* \* \*

b. Conversion, Loss or Destruction

You shall award to the Plaintiffs the reasonable fair market value of the property immediately before **it was damaged,** was wrongfully taken, lost or destroyed, plus interest rate at the rate of *(insert rate )* percent a year from *(insert date )* **minus the current reasonable fair market value of the** property until the date you return your verdict.

~~c. Total loss~~

~~Where the cost of repair to the plaintiff's damaged property is more than its fair market value, the award to the plaintiff shall be the market value of the property before it was damaged, together with loss of use, if any.~~

~~d. Loss of Use~~

~~The measure of damages for loss of use is the reasonable rental value of comparable property.~~  (Modified)

(Emphasis in original.)   Accordingly, when the trial judge instructed the jury on 23 February 2009, he instructed on damages for diminution in market value only:

> The Plaintiffs in this case are seeking three kinds of compensatory damages. . . . First they seek property damages in the form of diminution of the fair market value of their real property. . . . If you find that Exxon Mobil is liable for harm to a Plaintiff's real property, the Plaintiff is entitled to recover the difference between the fair market value of the Plaintiff's property before the injury and its fair market value after the injury.

The instructions on property damages that the trial judge delivered mirrored substantively the jury instruction proposed by Respondents.   Hence, we conclude that, because Respondents submitted a modified pattern jury instruction which struck loss of use and enjoyment as a measure of damages (an instruction which was adopted substantially and given by the trial court), Respondents elected to pursue property damages for diminution in value—not loss of use and enjoyment—at trial.   Just as we are unpersuaded by Respondents' other arguments (most of which are re-arguments of the doctrinal merits), we deny Respondents' Motion for Reconsideration.

■   Exxon requests that we order specifically that the assessment of costs in *Ford* (which we ordered to be paid pro rata by Respondents) include the cost of the premiums for the supersedeas appeal bond posted in each appeal of a plaintiff's judgment in the case—a total amounting to just under $1 million—pursuant to Md. Rule 1–406, which states that, "[u]pon request of the party entitled to costs[,] the premium

for a bond required to be filed in an action shall be included in costs." A supersedeas bond is a "writ or bond that suspends a judgment creditor's power to levy execution usua[lly] pending appeal." BLACK'S LAW DICTIONARY 1474 (8th Ed.2004). Pursuant to Maryland Rules 8–422(a)[2] and 8–423,[3] Exxon posted supersedeas bonds in the Circuit Court for Baltimore County in order to suspend the execution of the judgments in each of the cases considered in *Ford*, pending appeal. $920,566 in premium costs accrued between the entry of the judgments in the trial court (23 September 2009) to the expected date for the issuance of our mandate (28 March 2013).

Exxon's request provokes us to reconsider our allocation of costs in *Ford*, where we ordered all costs to be paid pro rata by Respondents. *Ford*, 433 Md. at 492, 71 A.3d at 144. Based on the extraordinary circumstances in *Ford*, we conclude that requiring Respondents to bear $1 million in premi-

---

**2.** Md. Rule 8–422(a) provides, in pertinent part:

(a) **Civil Proceedings.**

(1) Generally. Stay of an order granting an injunction is governed by Rules 2–632 and 8–425. Except as otherwise provided in the Code or Rule 2–632, an appellant may stay the enforcement of any other civil judgment from which an appeal is taken by filing with the clerk of the lower court a supersedeas bond under Rule 8–423, alternative security as prescribed by Rule 1–402(e), or other security as provided in Rule 8–424. The bond or other security may be filed at any time before satisfaction of the judgment, but enforcement shall be stayed only from the time the security is filed.

**3.** Md. Rule 8–423 states, in relevant part:

(a) **Condition of Bond.** Subject to section (b) of this Rule, a supersedeas bond shall be conditioned upon the satisfaction in full of (1) the judgment from which the appeal is taken, together with costs, interest, and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, or (2) any modified judgment and costs, interest, and damages entered or awarded on appeal.

(b) **Amount of Bond.** Unless the parties otherwise agree, the amount of the bond shall be as follows:

(1) *Money Judgment Not Otherwise Secured.* When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be the sum that will cover the whole amount of the judgment remaining unsatisfied plus interest and costs, except that the court, after taking into consideration all relevant factors, may reduce the amount of the bond upon making specific findings justifying the amount.

um bond costs is not only unreasonable, but unconscionable, under the circumstances. Hence, the mandate in *Ford* will be changed to order that the parties shall bear their own costs. This outcome results in a denial of Exxon's request.

We find persuasive support for our denial of Exxon's Rule 1–406 request and our revision of the cost allocation in our mandate in the federal appellate courts' consideration of judicial fairness in awarding costs to "successful" litigants in analogous situations to the parties here. The Second Circuit has noted that

> **costs in the federal courts** are considered an incident of judgment and **are not used as a punitive measure, nor to deter litigation.** *Hygienic Chemical Co. v. Provident Chemical Works*, 176 F. 525, 527–28 (2d Cir.1910). They are awarded solely to reimburse the prevailing party for a part of his litigation expenses. **Public policy considerations militate against allowing costs to be exacted as an "undue barrier to litigation."** *See Larchmont Engineering v. Toggenburg Ski Center*, 444 F.2d 490, 491 (2d Cir.1971).

*Furman v. Cirrito*, 782 F.2d 353, 354 (2d Cir.1986) (emphasis added). *See Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 481 F.3d 442, 449 (7th Cir.2007) (where the Seventh Circuit explained that the district court has "broad" discretion in denying premium bond costs under Fed.R.Civ.P. 39(a) and 39(e) "where . . . an appellate court modifies a district court's judgment.") (internal citations omitted). Here, we believe that requiring Respondents to pay the premium costs of Exxon's supersedeas bonds would deter future litigants in similar mass [4] toxic tort cases from pursing meritorious claims

---

**4.** We use advisedly the term "mass." Of course, there is no hard-and-fast rule establishing a threshold beyond which a toxic contamination claim transmutes from a toxic tort to a "mass" toxic tort. Clearly, neither *Ford* nor *Albright* approach the circumstances of something like *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984*, 809 F.2d 195, 197 (2d Cir.1987) (where a Bhopal chemical plant gas leak killed 2,000 people and injured 200,000, resulting in 145 class actions). Nonetheless, the combined total of plaintiffs approaching 700

against large corporations for fear of the high costs associated with the prosecution of an appeal of a possible judgment.

We note one particularly relevant case in which an appellate court modified the court costs in a toxic tort case involving the Exxon Corporation in the face of an otherwise egregiously unjust result for the plaintiffs. *Exxon Valdez v. Exxon Mobil Corp.*, 568 F.3d 1077, 1079 (9th Cir.2009), involved the resolution of post-judgment interest and appellate costs in a 1989 suit by 30,000 individuals and businesses for punitive damages against Exxon arising from an infamous 11 million gallon oil spill in Alaska. *Exxon Valdez* involved a torturous, approximately twenty-year litigation process that resulted in reducing the original punitive damage award to plaintiffs from $2.5 billion to $507 million. *Id.* The Ninth Circuit ordered Exxon and the plaintiffs to bear their own appellate costs based on Federal Rule of Civil Procedure 39(a)(4), which vests an appellate court with the discretion to order the allocation of costs—including bond premium costs under Fed.R.Civ.P. 39(e), according to the court in *Exxon Valdez*—when a judgment is "affirmed in part, reversed in part, modified, or vacated[.]" *Id.* at 1081. Because the court deemed that the judgment in *Exxon Valdez* fell under the purview of Rule 39(a)(4), it concluded that "neither side [was] the clear winner":

> The defendant owes the plaintiffs $507.5 million in punitives—according to counsel at oral argument the fourth largest punitive damages award ever granted. Yet that award represents a reduction by 90% of the original $5 billion. *In light of this mixed result, and mindful that the equities in this case fall squarely in favor of the plaintiffs*—the victims of Exxon's malfeasance—we exercise our discretion by requiring each party to bear its own costs.

*Id.* (emphasis added). Although there is no Maryland counterpart to Fed.R.Civ.P. 39(a)(4), we conclude that the Ninth Circuit's considerations in *Exxon Valdez* in awarding appellate

---

in *Albright* and *Ford* strike us as sufficient to deploy the modifier, "mass," with regard to either case or the two collectively.

costs in a supersedeas bond dispute are of particular signifi-cance to our conclusion that reason and fairness require each party in *Ford* to bear their own costs. In *Ford*, as in *Exxon Valdez*, there was a "mixed result" when we affirmed in part and reversed in part Respondents' judgments. The appellate litigation in *Ford* was pursued by both Exxon and Respon-dents. Respondents were likewise "victims of Exxon's malfea-sance" in damaging their properties as a result of the 26,000 gallon gas leak that contaminated many of their properties' wells over a span of thirty days.

The effect of applying literally Rule 1–406 in a case as extraordinary as the present one would require Respondents, who consist of individuals harmed by Exxon's admitted mal-feasance, to pay approximately $1 million in premium costs for the supersedeas bond posted by Exxon pending an appeal that it pursued, as did Respondents.[5] Such an outcome is not only unjust, but unreasonable. Therefore, we deny Exxon's Amended Request for Bond Premium Costs and order that the mandate in *Ford* be revised to order the parties to bear their own costs.

---

**5.** We note that, although the argument is not before us, avoiding a literal application of Md. Rule 1–406 here precludes a potential consti-tutional challenge: compelling individuals in the place of Respondents may argue that the penalty of paying such egregious premium bond costs on a reflexive basis may violate their constitutional rights. *See O'Donnell v. McGann*, 310 Md. 342, 350–51, 529 A.2d 372, 376 (1987) (addressing the possibility of a constitutional challenge where Petition-ers argued they were "financially unable" to meet the required superse-deas bond amount). Hence, as we resolved in *O'Donnell*, we "restate the familiar principle that a rule will be construed to avoid a possible conflict with the Constitution whenever that course is reasonable[,]" as we conclude is the situation in the instant case. *Id.* (internal citations omitted); *see Washington Suburban Sanitary Com'n v. Phillips*, 413 Md. 606, 620, 994 A.2d 411, 420 (2010) (stating that "a construction of a provision which casts doubt on its constitutionality should be avoid-ed.").