**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1278**

ROCKLEDGE ASSOCIATES, LLC,

Plaintiff - Appellant,

v.

TRANSAMERICA LIFE INSURANCE COMPANY,

Defendant - Appellee.

**No. 17-1297**

ROCKLEDGE ASSOCIATES, LLC,

Plaintiff - Appellee,

v.

TRANSAMERICA LIFE INSURANCE COMPANY,

Defendant - Appellant.

Appeals from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, District Judge. (8:16-cv-00710-PWG)

Submitted: December 7, 2017                    Decided: January 24, 2018

Before KING and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

William M. Bosch, Robert A. DeRise, John Robinson, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellant/Cross-Appellee. Rebecca A. Davis, C. Leanne Prybylski, SEYFARTH SHAW LLP, Atlanta, Georgia, for Appellee/Cross-Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Rockledge Associates LLC ("Rockledge") appeals and Transamerica Life Insurance Co. ("Transamerica") cross-appeals the district court's order granting in part and denying in part their respective motions for summary judgment. Rockledge contends that the Ground Lease between it and Transamerica has not terminated because the filing of a complaint in district court does not constitute notice under the Ground Lease to terminate the lease. Transamerica contends in its cross-appeal that it is allowed to, and did, waive the notice of default required in § 10.1 of the Ground Lease because the notice provision in that section is solely for its own benefit. Transamerica also has moved to dismiss Rockledge's appeal, contending that Rockledge has acquiesced to the judgment of the district court by reentering the Property and, therefore, that Rockledge has waived its right to appeal. We deny the motion to dismiss, and we affirm.

Turning first to the motion to dismiss, "[u]nder the *Erie*[1] doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). A law is "substantive" if it is outcome determinative—that is, whether "application of the standard" would "have so important an effect upon the fortunes of one or both of the litigants that failure to apply it would unfairly discriminate against citizens of the forum State, or be likely to cause a plaintiff to choose the federal court." *Id.* at 428 (brackets, ellipsis, and internal quotation marks omitted).

---

[1] *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

In Maryland, under the doctrine of acquiescence—also known as "[t]he doctrine of waiver[,] . . . estoppel, acceptance of benefits creating mootness, and acquiescence in judgment"—"a *voluntary* act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review." *Exxon Mobil Corp. v. Ford*, 71 A.3d 105, 126 (internal quotation marks omitted), *as supplemented on denial of reconsideration*, 71 A.3d 144 (Md. 2013). This rule is narrowly applied, however: "A party's right to appeal may be waived only where there is acquiescence in the decision from which the appeal is taken or by otherwise taking a position inconsistent with the right to appeal." *Id.* (internal quotation marks omitted). Furthermore, "[t]he waiver doctrine applies only to conduct that is necessarily inconsistent with the right to appeal." *Id.* at 127 (internal quotation marks omitted). In addition, "an exception to this rule is recognized in cases where the judgment is for less than the amount or short of the right claimed." *Dietz v. Dietz*, 720 A.2d 298, 301 (Md. 1998) (internal quotation marks omitted).

We have similarly ruled that, "[a]s a general rule, when a party knows the facts and *voluntarily* accepts the benefits of a judgment, he thus waives any errors in the decree and estops himself from appealing the decree." *In re Tudor Assocs., Ltd., II*, 20 F.3d 115, 118 (4th Cir. 1994) (internal quotation marks omitted). However, this rule "is not absolute," and "[a]n appeal is barred [only] when circumstances indicate an intention to finally compromise and settle a disputed claim." *Id.* (internal quotation marks omitted). Indeed, "it is the mutual manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties which bars a subsequent appeal." *Id.* (internal quotation marks omitted).

4

State and federal law on this issue are very similar and thus, the choice of state or federal law here is not outcome determinative. As a result, we need not decide the *Erie* question of whether Maryland or federal law applies. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 n.13 (1981).

We conclude Rockledge has not acquiesced in the district court's judgment under Maryland law. In particular, Rockledge's position on appeal—that the Ground Lease has not terminated—is not inconsistent with its acceptance of money for unpaid rent. *See Exxon Mobil Corp.*, 71 A.3d at 126. Furthermore, because Rockledge claims more than it received under the judgment, its acceptance of unpaid rent is not necessarily inconsistent with its right to appeal. *See Dietz*, 720 A.2d at 301. Rockledge would be entitled not only to the money it has already received under the judgment, but also—if it were to prevail on appeal—to money from future rental payments. Thus, we conclude Rockledge has not waived its right to appeal under Maryland law.

Similarly, we conclude Rockledge has not acquiesced in the district court's judgment under federal law. In particular, although it accepted payment on the judgment, Rockledge expressly indicated in its communications with Transamerica that it did not intend to waive its right to appeal the district court's judgment. Thus, because the record shows that Rockledge has not agreed "to finally compromise" and "bring the litigation to a definite conclusion," *In re Tudor Assocs., Ltd., II*, 20 F.3d at 118, we conclude that Rockledge has not waived its right to appeal under federal law, and we deny Transamerica's motion to dismiss.

5

Turning next to the merits, we review de novo a district court's grant of summary judgment. *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 108 (4th Cir. 2016). A court must grant summary judgment for the moving party when that party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment for the moving party is appropriate when the nonmoving party has the burden of proof on an essential element of its case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, a court must not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, a court must draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party must offer more than a mere "scintilla of evidence in support of [its] position." *Anderson*, 477 U.S. at 252.

We review de novo a district court's decision on an issue of contract interpretation. *Elderberry of Weber City, LLC v. Living Ctrs.-Se., Inc.*, 794 F.3d 406, 411 (4th Cir. 2015). "The interpretation of a written contract is a question of law that turns upon a reading of the document itself, and a district court is in no better position than an appellate court to decide such an issue." *Seabulk Offshore, Ltd. v. Am. Home Assurance. Co.*, 377 F.3d 408, 418 (4th Cir. 2004).

In Maryland, "the cardinal rule of contract interpretation is to give effect to the parties' intentions." *Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232 (Md. 2013) (brackets and internal quotation marks omitted). However, divining the parties' intent requires interpreting a contract objectively, not subjectively, and thus, "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding." *Id.* (brackets and internal quotation marks omitted). As a result, a court must "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Id.* (internal quotation marks omitted). Furthermore,

> in ascertaining the true meaning of a contract, the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.

*Id.* at 232-33 (brackets, ellipsis, and internal quotation marks omitted).

"When the clear language of a contract is unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *John L. Mattingly Constr. Co. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1074 (Md. 2010). Thus, a court will not go beyond the four corners of agreement when a contract is unambiguous. *Id.* Furthermore, when contract terms conflict, Maryland courts follow the general principle that *generalia specialibus non derogant*—the specific governs the general. *Fed. Ins. Co. v. Allstate Ins. Co.*, 341 A.2d 399, 407 (Md. 1975).

7

When a tenant abandons a lease, a landlord has three traditional common-law remedies: (1) "accept a surrender of the lease and thereby terminate the tenancy," so that the tenant is liable only for unpaid rent until the termination of the tenancy; (2) "reenter the premises for the account of the tenant" and "attempt to re-let the property for the tenant's benefit," holding the tenant liable for unpaid rent at the time of reentry, as well any deficiency between what the original tenant would have paid and what the new tenant, if any, would pay; or (3) "do nothing and hold the tenant liable for the entire amount of rent payable during the remaining term of the lease." *Circuit City Stores, Inc. v. Rockville Pike Joint Venture Ltd. P'ship*, 829 A.2d 976, 988-89 (Md. 2003).[2] When surrendering a lease, "[i]t is only when the minds of the parties to a lease concur in the common intent of relinquishing the relation of landlord and tenant, and execute that intent by acts tantamount to a stipulation to put an end thereto, that a surrender by act and operation of law arises." *Eidelman v. Walker & Dunlop, Inc.*, 290 A.2d 780, 784 (Md. 1972) (internal quotation marks omitted).

On appeal, Rockledge does not challenge the majority of the district court's rulings. However, Rockledge contends, contrary to the district court's holding, that the Ground Lease has not terminated because the filing of a complaint in court does not constitute notice to terminate the lease. Rockledge essentially argues that the district court's ruling

---

[2] It is unclear to what extent the third remedy remains viable for commercial leases, but we need not decide this issue. *See Circuit City Stores, Inc.*, 829 A.2d at 989.

that Rockledge's filing of its complaint constituted notice conflicts with the common-law remedies available to Rockledge.

Turning first to whether a complaint may qualify as "notice," the parties dispute the meaning of "notice" in § 10.1, but we conclude that, under either party's definition, a judicial complaint qualifies as "notice." Rockledge's assertion that a complaint could never serve as notice of default squarely contradicts the raison d'être of its complaint: the allegation that Transamerica has defaulted by failing to pay rent it owed. Rockledge also argues that a complaint could not qualify as notice because § 12.8 of the Ground Lease requires mailing the notice "by certified or registered mail" (J.A. 97),[3] but § 12.1 provides that all provisions of the Ground Lease "are to be construed as covenants" (J.A. 93), and covenants require only substantial performance, *Hartford Fire Ins. Co. v. Himelfarb*, 736 A.2d 295, 300 (Md. 1999), which may be enforced by either party, 15 Williston on Contracts § 44:52 (4th ed.).

Turning next to the effect of such notice, the Ground Lease contains the following provision regarding default:

> 10.1 <u>Events of Default</u>. If Tenant shall default in the performance of any of its obligations to pay the Fixed Rent or Additional Rent hereunder and if such default shall continue for thirty (30) days after written notice from Landlord designating such default or if within ninety (90) days after written notice from Landlord to Tenant specifying any other default or defaults Tenant has not commenced diligently to correct the default or defaults so specified or has not thereafter diligently pursued such correction to completion, then, and in any of such cases, this Lease shall terminate without further action of Landlord and this Lease shall be of no further force or effect and Landlord and the agents and servants of Landlord lawfully may, in

---

[3] "J.A." refers to the joint appendix filed by the parties on appeal.

9

addition to and not in derogation of any remedies for any preceding breach of covenant, immediately or at any time thereafter and without demand or notice and with or without process of law enter into and upon the Premises or any part thereof in the name of the whole and repossess the same as of Landlord's former estate and expel Tenant and those claiming through or under Tenant (with or without the institution of legal proceedings to evict) . . . .

(J.A. 87-88).

The Ground Lease also provides that both parties may pursue common-law remedies for breaches:

> 12.3 <u>No Waiver</u>. . . . Any and all rights and remedies which either party may have under this Lease or by operation of law, either at law or in equity, upon any breach, shall be distinct, separate and cumulative and shall not be deemed inconsistent with each other; and no one of them whether exercised by said party or not, shall be deemed to be in exclusion of any other; and any two or more or all of such rights and remedies may be exercised at the same time.

(J.A. 94).

Rockledge is correct, in a way, that the district court's ruling conflicts with the common law. In particular, as Rockledge points out, a landlord must file a complaint to recover unpaid rent. But filing the complaint would constitute "notice" under the district court's ruling, which would trigger the termination of the Ground Lease under § 10.1. What Rockledge misses, however, is that the district court's seemingly contradictory ruling stems from the fact that the Ground Lease itself is contradictory: § 10.1 provides that the Ground Lease "shall terminate without further action of Landlord" after a certain period of time (J.A. 88), while § 12.3 provides that the Rockledge could pursue common-law remedies—which necessarily means filing a complaint to enforce those remedies. Read together, §§ 10.1 and 12.3 mean that Rockledge may pursue a common-law remedy—

10

which it did here—but that such action will terminate the Ground Lease. Insofar as §§ 10.1 and 12.3 conflict—for example, because § 10.1 provides for automatic termination of the Ground Lease, while under the common law, "[t]he tenant does not end his obligation to pay rent by abandoning the leased property, unless the landlord accepts what is in effect the tenant's offer to surrender the leased property, thereby terminating the lease," Restatement (Second) of Prop.: Landlord & Tenant § 12.1 cmt. I (Am. Law Inst. 1977)— § 10.1, as the more specific provision detailing what happens when a tenant defaults, takes precedence over § 12.3, which merely describes in general terms the rights of the parties. *See Fed. Ins. Co.*, 341 A.2d at 407. Ultimately, Rockledge would not have found itself in this situation if it had not agreed to abrogate its common-law right to refuse to accept a surrender of a lease, thus preventing the lease from terminating, by creating a contractual obligation that the Ground Lease would automatically terminate. Yet it is axiomatic that parties enjoy the freedom of contract: "As a general rule, parties are free to contract as they wish." *Stickley v. State Farm Fire & Cas. Co.*, 65 A.3d 141, 153 (Md. 2013) (internal quotation marks omitted). The two parties in this case are sophisticated commercial entities with counsel, and Rockledge has not pointed to any public policy prohibiting the automatic termination of a lease. *See Wilson v. Nationwide Mut. Ins. Co.*, 910 A.2d 1122, 1131 (Md. 2006) ("A contractual provision that violates public policy is invalid . . . ." (internal quotation marks omitted)).

Thus, because Rockledge's complaint provided notice that Transamerica was in default, pursuant to § 10.1, the Ground Lease terminated 30 days later, on April 14, 2016. Accordingly, we affirm the district court's ruling with respect to Rockledge's appeal.

11

Turning to Transamerica's cross-appeal, "it is elementary that either party to a contract may waive any of the provisions made for [its] benefit." *Twining v. Nat'l Mortg. Corp.*, 302 A.2d 604, 607 (Md. 1973). "Although a party may waive a provision included in a contract for that party's sole benefit, a party cannot waive a contractual requirement that benefits both sides to the transaction." *Grant v. Kahn*, 18 A.3d 91, 97 (Md. Ct. Spec. App. 2011) (brackets and internal quotation marks omitted). We conclude that the notice provision in section 10.1 benefits both parties and that Transamerica may not waive the notice requirement unilaterally. Thus, the district court did not err in so ruling.

Accordingly, we deny the motion to dismiss, and we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*